J-S28003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: T.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.Q., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 350 WDA 2023 |

Appeal from the Order Entered February 27, 2023
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000089-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: C.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.Q., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 351 WDA 2023 |

Appeal from the Order Entered February 27, 2023
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000087-2022

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:                **FILED: September 29, 2023**

M.Q. ("Mother") appealed from the orders[1] granting the petition of the

Allegheny County Children and Youth Families ("CYF") and involuntarily

terminating her parental rights to her minor, dependent children, T.W., a male

---

[*] Former Justice specially assigned to the Superior Court.

[1] This Court *sua sponte* consolidated the appeals.

born in June 2019, and C.R., a female born in December 2010 (collectively, "Children") pursuant to 23 Pa.C.S.A. § 2511(a)(2), (8), and (b).[2] We affirm.

Mother has seven children, all of whom have been a part of dependency proceedings. In 2013, the Washington County Children and Youth Services removed C.R. from Mother's care following her arrest on a robbery charge. Child was returned to Mother's care in 2014, and the case was subsequently closed.

However, in February 2018, CYF reopened a case relating to C.R. CYF alleged that a CYF caseworker discovered that Mother's home was in terrible condition, as it had no beds for her children, no heat, and exposed wires hanging from the ceiling. CYF implemented emergency services, including providing housing for Mother and her children. Despite the services, C.R. failed to attend school on a regular basis. As a result, CYF filed a dependency petition. Mother stipulated to the presence of trash in the residence, as well as the lack of heat and running water. Mother also stipulated that her children had "missed a lot of school." The trial court adjudicated C.R. dependent in November 2018, though she remained in Mother's care. The trial court then terminated supervision in 2019.

On November 26, 2019, via an emergency custody authorization, CYF removed Children from Mother's home, after alleging that Mother and M.D.W.

---

[2] The trial court also involuntarily terminated the parental rights of C.R.'s father, J.T.Q., and T.W.'s father, M.D.W.

engaged in a physical altercation in front of Children. Notably, when Children were removed, a CYF caseworker alleged that Mother's home was cluttered and included several bags of garbage; several bags of clean and dirty clothing; dishes on the floor; the children's clothes, bedding, and blankets were dirty; and rodent droppings and dog feces were seen throughout the home. The caseworker also noted that C.R. was truant from school.

Mother stipulated that she had a physical altercation with M.D.W. in the presence of Children, and that truancy was still an issue with C.R. Thereafter, the trial court adjudicated Children dependent. The trial court also ordered Mother to engage in intimate partner violence services, drug and alcohol treatment, and mental health treatment.[3] In February 2020, CYF authorized T.W.'s return to Mother, as long as she had proper childcare arrangements. Nevertheless, while Mother had some unsupervised visitation with T.W., he was not returned to Mother's care. C.R. remained in placement after being removed from Mother's home.

On July 11, 2022, CYF filed a petition to terminate Mother's parental rights. The trial court held hearings on the petition, at which numerous witnesses testified. Following the hearings, the trial court involuntarily terminated Mother's parental rights to Children. Mother filed this timely appeal.

---

[3] Mother had two driving under the influence charges in 2020.

On appeal, Mother raises the following questions for our review:

1. Did the trial court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) and (8)?

2. Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the child pursuant to 23 Pa.C.S. § 2511(b)?

Appellant's Brief at 8.

Here, we will address Mother's claims simultaneously. In her first claim, Mother contends that CYF failed to produce clear and convincing evidence to terminate her parental rights under Section 2511(a)(2). *See id.* at 27, 32. Mother argues that the evidence did not establish her continued incapacity to provide care for Children. *See id.* at 29, 31-32. Mother further argues that she could remedy the conditions that led to Children's removal, noting that she was taking part in mental health treatment, completed an intimate partner violence program, attended therapeutic visitation, and secured a stable home. *See id.* at 29-30. Mother also asserts that she has maintained her sobriety. *See id.* at 31.

In her second claim, Mother argues that the trial court erred in finding that CYF presented clear and convincing evidence that the termination of her parental rights would meet the best interest of Children under Section 2511(b). *See* Appellant's Brief at 33. Mother claims that she loves Children and adds value to their lives. *See id.* at 34. Mother asserts that termination

would deprive Children of a relationship with her, which is not in their best interests. *See id.*

In matters involving involuntary termination of parental rights, our standard of review

> requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*Int. of H.H.N.*, 296 A.3d 1258, 1263 (Pa. Super. 2023) (citation omitted).

"[T]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act and requires a bifurcated analysis of the grounds for termination followed by an assessment of the needs and welfare of the child.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b):  determination of the

needs and welfare of the child under the standard of best interests of the child.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). "It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination." ***Id.*** (citation omitted).

This Court may affirm a decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a), as well as a consideration of Section 2511(b). ***See In re Adoption of A.H.***, 247 A.3d 439, 442 (Pa. Super. 2021).

Here, we will consider the trial court's termination orders pursuant to subsections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity,

abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

With regard to termination of parental rights under Section 2511(a)(2), we have stated that

[i]n order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

**Int. of D.R.-W.**, 227 A.3d 905, 912 (Pa. Super. 2020) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." **Id.** at 913 (citation omitted); **see also In re Adoption of S.P.**, 47 A.3d 817, 827 (Pa. 2012) (explaining that "a parent who is incapable of performing parental

- 7 -

duties is just as parentally unfit as one who refuses to perform the duties.").

"Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re Z.P.*, 994 A.2d 1108, 1117-18 (Pa. Super. 2010) (quotation marks and citations omitted).

Here, in finding grounds for termination of Mother's parental rights as to T.W. pursuant to Section 2511(a)(2), the trial court stated the following:

> [T.W.] was removed from Mother's care at five months old. Since then, Mother has struggled with ongoing drug and alcohol abuse and intimate partner violence, as well as an inability to understand and take accountability for how those issues affected her reunification with [T.W.] Although Mother did complete an intimate partner violence program and eventually began engaging in the appropriate recommended level of drug and alcohol treatment, Mother both took too long and failed to make sufficient progress to demonstrate capacity to appropriately parent [T.W.]
>
> Mother hindered her own progress in working toward reunification with her lack of candor to the [trial c]ourt and delay in meeting the [trial c]ourt's expectations, all while [T.W.] was growing up in someone else's care. Despite the [trial c]ourt's repeated emphasis on the need for complete separation from [M.D.W.], Mother continued her relationship with him and still remained in contact with him in July of 2022. Mother failed repeatedly to engage in the appropriate level of drug and alcohol treatment. Mother's consistent compliance with treatment did not even begin until November 2021, two years after [T.W.'s] removal, and CYF's concerns regarding Mother's drinking continued well into 2022. Mother's own testimony during review hearings, as well as video footage of Mother in a bar in February 2021, confirmed CYF's ongoing concerns. Additionally, once given the opportunity to have supervised visits with [T.W.] in her home,

it still took Mother almost a year to have her home assessed by the CYF caseworker.

During the termination hearing, Mother's own testimony demonstrated her ongoing failure to appreciate the issues identified by the [trial c]ourt or to take accountability. Mother continued to minimize and deny any alcohol problem, reporting that she is now working as a bartender despite being in early sobriety. Mother also testified that she would not drink now "unless [she] was just having one of those days." Similarly, during her individual evaluation with Dr. Pepe, Mother continued to deflect and minimize her behavior. Mother failed to demonstrate accountability, reporting she felt she was being punished because [T.W.] had not been reunified with her. Ultimately, Dr. Pepe concluded that Mother has not made the necessary personality changes required to establish capacity to parent [T.W.].

The evidence presented during the termination hearing clearly established the chronic nature of the issues that have caused Mother to be unable to provide essential care to [T.W.]. The [trial c]ourt recognizes Mother's recent progress. Mother has maintained her drug and alcohol treatment at SHORES, has had several consecutive clean drug screens…. However, the [trial c]ourt considers that progress too tenuous to overcome Mother's long history of chronic problems, the length of time it has taken Mother to attain the progress she has achieved, and Mother's own statements at the termination hearing that reveal her continued lack of insight and accountability. The [trial c]ourt cannot delay permanency for [T.W.] forever so that Mother can demonstrate she is capable of maintaining her recent progress.

As such, the record justified the [trial c]ourt's conclusion that Mother cannot or will not remedy the problems that have made her incapable of parenting [T.W.].

Trial Court Opinion, 5/15/23, at 18-20 (footnote omitted).

Likewise, with respect to C.R., the trial court found grounds for termination of Mother's parental rights pursuant to Section 2511(a)(2):

Mother and [C.R.] have been active with the child welfare agency in both Allegheny and Washington County since 2011. Since then, Mother has struggled with basic neglect, inadequate

supervision of her children, and truancy issues. Most importantly, Mother exhibits a long-standing inability to establish a healthy parent-child relationship. Despite consistently engaging in the TRAC services specifically designed with goals to address the causes of her incapacity to parent [C.R.], Mother has not succeeded in remedying the [trial c]ourt's concerns. Indeed, Ms. Tuttle testified during the hearing that Mother continues to regress during visitation with [C.R.] and is not currently able to meet [C.R.'s] emotional needs on a daily basis. Similarly, Dr. Pepe observed Mother to continue to lack empathy and opined that she does not currently have the capacity to parent [C.R.]

The evidence clearly established the chronic nature of the issues that have caused Mother to be unable to provide essential care [C.R.]. Given over ten years of chronic difficulties, the [trial c]ourt justifiably concluded that Mother cannot or will not remedy the problems that have made her incapable of parenting [C.R.]

Trial Court Opinion, 5/5/23, at 19-20 (footnotes omitted).

Our review of the record confirms that the trial court's findings and determinations are supported by competent, clear, and convincing evidence, and we otherwise discern no abuse of discretion or error of law. *See Int. of H.H.N.*, 296 A.3d at 1263. The record reveals that Mother failed to fully complete court-ordered services aimed at reunification with Children. Most importantly to the trial court, although Mother completed intimate partner violence treatment, she continued to have a relationship with M.D.W., and further reported violent incidents with partners in February 2021, March 2022, and January 2023. *See* N.T., 2/15/23, at 232, 245-46, 283-84.

Moreover, Mother is unable to provide the essential care to Children, despite the involvement of child agencies for over 10 years. Notably, Mother would repeatedly leave Children without adult supervision, and Children

displayed poor personal hygiene when in Mother's care. ***See id.*** at 246-48; ***see also*** N.T., 12/16/22, at 95. Additionally, Tuttle stated that Mother could not meet the emotional needs of Children, and Dr. Pepe opined that Mother did not have the capacity to care for Children. ***See*** N.T., 12/16/22, at 69-70, 140.

As this Court has repeatedly stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." ***Int. of D.R.-W.***, 227 A.3d at 914 (citation omitted). The record substantiates the conclusion that Mother's repeated and continued incapacity, neglect, or refusal has caused Children to be without essential parental control or subsistence necessary for their physical and mental well-being. ***See id.*** at 912. Moreover, Mother cannot or will not remedy this situation. ***See id.*** Therefore, we can find no error or abuse of discretion in the trial court's finding that termination pursuant to Section 2511(a)(2) was proper.

Because CYF met its burden under Section 2511(a), the trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). "Notably, courts should consider the matter from the child's perspective, placing her developmental, physical, and emotional needs and welfare above concerns for

- 11 -

the parent." *Int. of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023) (citation omitted). "[T]he determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis." *Id.* (citation omitted).

"The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citation, brackets, and quotation marks omitted). Determining a child's needs and welfare "requires consideration of the emotional bonds between the parent and child." *Id.* (citation omitted). However, "analysis of the parental bond is but one part of the overall subsection (b) analysis, which includes a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." *Int. of K.T.*, 296 A.3d at 1113.

> The Section 2511(b) inquiry must also include consideration of other important factors such as: the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability. These factors and others properly guide the court's analysis of the child's welfare and all her developmental, physical, and emotional needs. Trial courts have the discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs.

*Id.* (citations and footnote omitted).

Here, in finding that T.W.'s emotional needs and welfare favor termination pursuant to Section 2511(b), the trial court stated the following:

In this matter, the evidence amply supported the [trial c]ourt's conclusion that termination of Mother's parental rights served [T.W.]'s needs and welfare. [T.W.] was removed from Mother's care when he was five months old. Following interactional evaluations between [T.W.] and Mother, and [T.W.] and his foster parents, Dr. Pepe opined that [T.W.'s] primary attachment is to his foster parents who have been providing care for [T.W.] for over two years. Dr. Pepe noted that [T.W.] is "exceptionally happy" and "developmentally thriving." During the interactional evaluation between [T.W.] and his foster parents, Dr. Pepe observed [T.W.] to display spontaneous affection and multiple bonding behaviors such as close physical proximity and ongoing eye contact. In contrast, during the interactional evaluation between [T.W.] and Mother, Dr. Pepe observed no bonding behaviors and noted [T.W.] was "sullen" and "emotionally shut down." Notably, Dr. Pepe expressed no concern regarding any emotional distress [T.W.] may feel as a result of severing his relationship with Mother, yet opined that [T.W.] could suffer psychological problems and experience developmental losses should he be removed from the care of his foster parents. Given Mother's delay in addressing the needs identified by the [trial c]ourt, the length of time [T.W.] has been in placement, and [T.W.'s] substantial progress and secure attachment with his foster parents, the [trial c]ourt justifiably concluded that [T.W.'s] need for safety, permanency, and stability outweighs the possible benefit to him of maintaining his relationship with Mother and, further, that termination of Mother's parental rights served [T.W.'s] needs and welfare.

Trial Court Opinion, 5/15/23, at 21-22 (footnotes omitted).

Additionally, the trial court found that termination would best serve the needs and welfare of C.R.:

The evidence in this matter supports the court's conclusion that [C.R.'s] bond with Mother is unhealthy, that [C.R.] will not suffer extreme emotional consequences from termination of Mother'[s] parental rights, and that instead terminating Mother's rights will enable [C.R.] to develop healthy relationships moving

forward. Consequently, the evidence supports the [trial c]ourt's ultimate conclusion that termination of Mother's parental rights served [C.R.'s] needs and welfare.

Given that th[e trial c]ourt identified the nature of Mother and [C.R.'s] relationship as the primary concern at the time of adjudication, it necessarily called into question the nature of the bond between Mother and [C.R.]. The evidence presented at the termination hearing revealed that, although Mother participated in the therapeutic visitation and her own individual therapy, she was unable to gain enough insight into and accountability for how her own past trauma affects her parenting. Without this insight and accountability, Mother has been unable to change the dynamic of her relationship with [C.R.] and to make herself emotionally available as a parent.

Over the life of the case, the [trial c]ourt has noted the impact the nature of the bond has had on [C.R.] and that it causes her confusion with her role as a child and not a caregiver. [C.R.] has demonstrated parentified behavior and a desire to take responsibility for Mother's emotions. Dr. Pepe observed [C.R.] to be "on-edge" and attempting to assert control during her interactional evaluation with Mother and a sibling.

In contrast, [C.R.] was relaxed and comfortable with her foster parents. [C.R.] feels foster parents satisfy her basic needs, acknowledging a sense of commitment and safety in their care, and commenting that they do not yell at her, hit her, or throw things at her. Following the interactional evaluations, Dr. Pepe opined that [C.R.] has a positive primary attachment to her foster parents, and that to remove her from their care would cause [C.R.] to regress into her former behaviors.

[C.R.'s] substantial progress in her foster parents' care supports the [trial c]ourt's conclusion that [C.R.] will not experience extreme emotional consequences as a result of the Court's decision in this matter. The record reflects that [C.R.] has already come to terms with the possibility of less contact with Mother. Considering whether termination of Mother's rights would negatively impact [C.R.], Dr. Pepe opined that the strength and stability of [C.R.'s] relationship with her foster parents will help to alleviate any potential detrimental effects.

Given Mother's inability to develop a healthy relationship with [C.R.], and [C.R.'s] substantial progress and secure attachment with her foster parents, the [trial c]ourt justifiably concluded that [C.R.'s] need for safety, permanency, and stability outweighs the possible benefit to her of maintaining her relationship with Mother and, further, that termination of Mother's parental rights served [C.R.'s] needs and welfare.

Trial Court Opinion, 5/5/23, at 22-24 (footnotes omitted).

Upon review, we discern no abuse of the trial court's discretion, as the record supports the finding that Children's developmental, physical, and emotional needs and welfare favor termination of Mother's parental rights pursuant to Section 2511(b). **See Int. of K.T.**, 296 A.3d at 1113. At the time of the hearings, Children had been in care for over three years, and C.R., who was 12-years-old, indicated her preference that Mother's parental rights be terminated and foster parents adopt her. **See** N.T.,12/16/22, at 152 (wherein Dr. Pepe stated C.R.'s strong preference was to be adopted by her foster parents and that she understood Mother's rights would be terminated as a result); **see also** N.T., 2/15/23, at 349. Furthermore, T.W. was clearly bonded with foster parents, and Dr. Pepe opined that T.W. would experience developmental and psychological problems if he was removed from foster parents. **See** N.T., 12/16/22, at 133, 140.

As we have repeatedly stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." **In re Z.P.**, 994 A.2d at 1125 (citation omitted); **see also Int. of K.T.**, 296 A.3d at 1108 (noting that when considering a

termination petition, courts "must keep the ticking clock of childhood ever in mind. Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly." (citation and emphasis omitted)). Rather, "a parent's basic constitutional right to the custody and rearing of … her child is converted, upon the failure to fulfill … her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." **In re B., N.M.**, 856 A.2d 847, 856 (Pa. Super. 2004) (citation omitted). Moreover, while Mother professes to love Children, her feelings of love and affection for her children will not preclude termination of her parental rights. **See In re Z.P.**, 994 A.2d at 1121 ("A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." (citation omitted)). Therefore, we conclude that the trial court's findings pursuant to Section 2511(b) are supported by the record.

Accordingly, based upon our review of the record, we find no abuse of discretion, and conclude that the trial court appropriately terminated Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(2) and (b).

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/29/2023</u>